In this case in the morning call, Capron Rescue Squad District v. North Boone Fire Protection District is calling for a case number 219-355 on behalf of the Ambulance Agency, Hirsch, on behalf of the Appalachian area. Mr. Hirsch, you may proceed.  Rules of statutory interpretation set forth that we have to give all the words meaning, all their plain meaning, and read the statute to the floor. Mr. Hirsch, before we get into statutory interpretation, I have a question for you. Yes. Isn't this case moot now that the election has been completed and the results certified? And if it is, how can we hear this case today? Well, I don't believe it's moot because two things. One, I don't believe they started to run their ambulance service or collect the tax yet. And two, the controversy would still exist for other districts within the state of Illinois. And I think it's important enough that we give an answer to it. Well, is there any exception to mootness that would apply? Other than what I just said, I have not found a... Have you ever heard of the public interest? I guess that's what I was meaning by we have these other districts that I think need an answer to this as well. I was actually contacted by another district down in Chillicothe when the first round of this took place. As you read, this is an ongoing issue in our districts. They were having some of the same issues down there. So it isn't just these two districts, I don't believe. There's a handful of emergency ambulance districts in the state of Illinois. And I think that they're all surrounded by and have obviously fire protection districts within reach and probably within their own districts as well, like here. And I do think that the public needs to know whether they can be taxed by both of these bodies to provide the emergency ambulance services. And one other question before we get to the statutory interpretation. Part of the relief that you request is that we declare the election void. What authority have you given us and what argument have you made in your brief with respect to us addressing that relief? The voting is what I guess the best way to put it is that if they couldn't have gone to ballot in the first place, then there shouldn't have been an election. Therefore, it should be void, not voidable. And I don't have any affidavit for that. I think the appellee actually addressed a little bit of that at the lower level when they talked about the sanctity of the voting and the right of the people to choose. However, I think in this case, with the conditions of precedent that were not met, in other words, there is continuing ongoing adequate emergency service within the entire fire protection district that should prohibit them from going to the ballot at all, and therefore it should be void. But as far as precedent, none. Is there any precedent for two fire protection or ambulance districts assessing a tax for the same coverage? Not that I'm aware of. I've not seen that anywhere. There's just very little, there's no case law on this subject. Well, there was a case that I was reversed on. I think it had something to do with Rockford and Winnebago County. It was a fire protection district along with the county and their regulations relating to sprinkler systems, fire alarms, and so on and so forth. And I basically determined or affirmed the trial court that said that the county was the prevailing party. The decision basically said that these people in unincorporated areas shouldn't be forced to, as was the case, have to deal with conflicting, and I mean conflicting. It wasn't just a philosophical or hypothetical conflict. It was a conflict between the two regulations. The Supreme Court said, no, there's nothing wrong with having two bodies tell someone what they can and cannot do, so long as they're big enough and strong enough and broad enough. It beats the guy in the head with a two by four, so why can't two ambulance services tax at the same time? Again, just because I have to keep going back to this condition precedent to even get to the point where they can even ask for the tax to run the ambulance service. In your situation, it sounds like there was conflicting ordinances or statutes. Ordinance and a regulation. And here, I don't think we have that. It's simply providing the exact same service. And the statute, as far as I'm concerned, sets forth that we want to make sure everybody has ambulance services, and in places they don't, we should be able to have the fire districts do this. Can you pincite to where in the statute it sets forth the procedure and by whom the finding is supposed to be made? Is it supposed to be a court? Is it supposed to be the state fire marshal? Is it supposed to be, like in this apparent case, the fire protection district that made a finding? Can I ask an ordinance or at least certify the question? DHS keeps very strict records on response times and advocacy of the service that's going on within the district. And they're certainly in a position to be able to make that decision. It does not say that in the statute or in the DHS regulations. But certainly they would be in a position to notify someone, and I believe they have in the past notified other ambulance services that, hey, you're falling below standards, you know, that kind of thing. So that would be, I think, the regulatory body that would come up with a decision whether it's the name of the body, the Department of Health and Human Services. In Springfield, basically? They have a division in Chicago, yes, Springfield. It's a state agency? Yes. So if we look at the statutory language in the first line of Section 22, it does say, Board of Trustees, and I'm not reading all of it, is authorized under the terms and conditions hereinafter set out. I believe it's your position that everything that follows is a term and condition. Is that correct? It must be followed. Is that correct? Under Section A3 sets forth the terms and conditions, yes. Just A3 is part of a term and condition? All of subsection A1 through 3. Right. And so, okay, my question is, though, how do we get by the fact that the first line of A says it is declared as a matter of public policy? And so doesn't that inform how we are to read A1, 2, and 3? And if that's the case, how do we account for what you just talked about? Sure. How is the 3 alone just a term and condition, and isn't 3 part of the first line of A, which means it's policy? Well, if we don't find any authorized under terms and conditions, without A through 3, there are no terms and conditions. So that language would be completely superfluous and would have no meaning. Because they could have just started out with, a board of trustee of a fire protection district incorporated under this act is authorized to go to the ballot. And they didn't. They put this paragraph in there, I believe, to show the intent that we want to make sure that everybody has access to ambulance service. So we're going to make sure that they do by authorizing fire districts to be able to do that in the event that there isn't any continuing ongoing service. They set forth some ideas of what they'd like to see, I think. So maybe some policy that we'd like to see this provided by private ambulance services, but that can't be sustained in this rural area where there's such a small population. But the language in 3, and actually we find the same words in 1, 2, and 3 of A, are should be. In the event adequate, and I'm reading from 3, and continuing emergency ambulance services do not exist, fire protection districts should be. And again, same in 2. Should be, should be. Again, that's policy as opposed to a requirement. Is it not? So if it's just policy, how can it be a precondition? And I guess I can only answer that maybe with a question, and I mean no disrespect by that at all. But if those aren't the terms and conditions, then what does authorize under the terms and conditions here and after set out? There wouldn't be any conditions, I don't believe. They would just say whenever they want to go to ballot, they can for emergency services. Well, but B, I guess one could read B as setting out the terms and conditions being the language of B. Whenever the Board of Trustees, the district desires, it shall certify. And then, you know, they go on to be more specific. So why wouldn't that be possible? Well, it doesn't say in the first line under all the terms and conditions here and after set out. I guess one could infer that logically it would be the ones that would apply. And if they come under public policy, they wouldn't be necessarily a prerequisite. Well, again, I guess it just seems logical that if there is ongoing continuing adequate service, there isn't a need for more. Everybody's being provided the services that the policy maybe sets forth that we provide for general health and welfare. If that's the case, then why would the statute also provide for limiting ambulance services? That's a good question, and I can't answer why they put in there that they can limit it. I guess I could compare it to the municipality code versus the county code. Municipalities certainly seem to have much more authority over certain things than the county. And maybe that's the hang-up here. What's the mechanism for limiting ambulance services? Does the law require that it can only be prospective in its ordinances such that your client is grandfathered in, or is your client a grandmother who isn't grandfathered in and who, therefore, can be limited? I think that's all part of the problem with the statute, to be honest with you. I've talked with— That's the beauty of it. I understand. I've talked with the 911 operators, the sheriff, quite frankly, and the state's attorney in Boone County, and they're not looking at this as Caper and Rescue Squad being completely removed from North Boone Fire District 3's, that they're just going to start—North Boone Fire District 3 would become the primary, if you will, and Caper and Rescue Squad would become the secondary in the event that North Boone 3 is not available. That's going to cut down a great deal on— Is there an association of fire protection districts or ambulance service districts? I have not found one for ambulance—emergency ambulance districts. I think there is for fire protection districts, but I've never represented a fire protection district myself, but I've had conversations with some attorneys that do. Well, it's an observation. It's not a recommendation, but it would seem that there are some issues with this statute that would benefit from clarification, and if there was an association, it might consider lobbying for clarification. Yes, we did reach out, again, on the very first conflict, I guess, here between these two districts, and we just didn't get very far down in Springfield, but we're certainly going to continue on those efforts. Does the Capron District operate in any other fire district? Yes. And which one is that? There's North Boone Fire District 3. No, it's North Boone Fire District 2, I'm sorry. District 2, 1, I believe, is the one that serves Fellanier Township. Leroy Township is served by Capron Rescue Squad District. And essentially what would happen, they also provide service to the Winnebago County line, so what would happen is you're going to have this North Boone Fire District 3 would be carved out, and you're going to have all, and it's my understanding they go all the way to the Wisconsin border as well, so you would have a situation where you have Capron Rescue Squad District would have the northeastern portion of Boone County, then the northwestern portion of Boone County, but wouldn't be the primary for the central northern Boone County. Are there overlapsing portions where somebody, some resident, some business might be in both areas? Yes, I believe there is. Does Capron, does this district come into McHenry County? Do they operate in McHenry County at all? Only as a backup. Okay. Only part of Mavis. Can this fire protection, I'm sorry, not fire, but the Rescue Squad District actually levy, does it have the ability to levy taxes? Yes. Okay. It certainly does. That's how they got started. They've been operating since the 50s, but then when the enabling statute for emergency ambulance services came into play, they passed that in the 90s, so in 1990, so that's when that took place. They became officially incorporated. They've been providing services throughout northern Boone County since the 50s. So this, whatever District 3, Boone County Fire Protection 3 did, didn't in any way step on their taxing or levying power for Capron Fire or Capron Rescue Squad District? I don't believe, again, I think that's going to determine on how this is all interpreted. If North Boone 3 limits the fire protection, or I'm sorry, the emergency ambulance services only to themselves, does that remove the tax from that, from taxing the citizens for the Capron Rescue Squad District? I don't have an answer for that. But that's not an issue here, right here in what we're talking about today. As part of this lawsuit, no. This would not, that's not an issue that's involved here, but it's one of the consequences, possibly. But we don't, I haven't seen any regulations or limiting language other than the original ordinance from North Boone 3. If your time is up, you'll have a chance to make, or an opportunity, not a chance. It's far shorter than a chance. I thank you very much for the opportunity. I really do. Thank you. Ms. Thomas? Do you have any disagreement with there's a public interest aspect of this? Globally, there's a public interest in this case. I don't believe that the appellants had the standing to bring forth that public interest before this court or before the trial court. So you disagree with the judge that said that it's a possibility or probability that the service district could be injured by the passage or the implementation of this? We did disagree that. We raised standing at the trial court. Why don't you think it's being injured or that there is no injury or that it's speculative or what? I mean... So, all of those things, actually. It is speculative because they're both, first of all, let's start a little bit at the beginning. Both districts are currently running ambulance services. And my clients have been running ambulance services for quite a period of time. The more ambulance services that are available can certainly not be thought of as a detriment to the citizens. That was the point of Section 22 of the Fire Protection District Act, was that it provided as much ambulance services as the citizens would really desire to serve. I mean, ultimately, really, the voters are the ones who say, yeah, we need more ambulance service or not. So by Capron saying, you know, they're coming into our territory, they're already in the territory. So what is the additional injury that they're claiming? Are you saying that your client has been running ambulances before this ordinance was passed? Right. So all this ordinance really did was give your client the opportunity to obtain revenue to subsidize what you've been doing for some time? That's exactly right. What about the part about limiting other ambulance services? The public agencies are not – it's not a competitive situation. In other words, you're not fighting over particular callers. Right, exactly. Well, you might be though, wouldn't you, if in fact Capron has submitted its levy on the basis of area it covers, and now that's going to be covered additionally by District 3, that could impact their ability to collect taxes, correct? No, it won't impact their ability to collect taxes. Okay, as much money in taxes. No, honestly, I don't think so. If the voters don't want to pay double taxes for ambulance services, they will vote down the referendum, and they will be covered by Capron. In this case, they didn't do that. That tends to make sense so long as the territorial boundaries are, quote, contiguous. But once you get a situation where there's a pocket where somebody is going to get double taxed as opposed to the entire area, and I got the impression from listening to Mr. Hirsch that there are areas where there's double coverage. There are some areas where there aren't double coverage or isn't double coverage. So there's a situation, factually, where certain voters will want one because they want one, and other voters won't want one because they don't want two. So it's not exactly a copacetic hypothetical with philosophical unity. Well, there's always going to be voters that disagree about a certain situation, but it's the majority of the voters here. So if the majority of the voters feel like they would be better served by having two districts that are serving their territory, then they will vote for that referendum. And there are private ambulance services running in the area as well? You know, I don't believe that there are. I believe this area is served primarily by municipal. There's no Uber ambulance service? Not that I'm aware of, no. Well, the voters don't, and thus far, since this was an April 2, 2019 election, maybe the voters don't understand the implication yet because they haven't seen it on a tax bill. They might not understand the implication, but they voted for it. They passed it. Is there anything that prevents the districts from realigning their territories? I don't believe so. And if there are pockets that are not annexed within these particular districts, then certainly there are legal avenues to correct that. And maybe by an annexation action, that will then correct some of this taxation issue. But that is all. Well, by virtue of the fact that there are now taxing, there's Capron taxing and there's District 3 taxing because you're already providing the service, so there must be something on the books already. How does that not provide an interest to Capron for their future ability to tax and collect? I would analogize it to two municipalities who, you know, one may do an annexation to try and gain additional territory, but that doesn't, and the contiguous municipality maybe loses out on that opportunity to annex. They're essentially two like municipalities trying to do the same work. And the fact that one is doing the work and one is not doing the work does not harm the other one. You're right. Maybe the taxation will be a little bit different if there's some annexation down the road, but they can double tax in these certain areas. So the taxpayers may be hurt by that double taxation or they may not like that double taxation, but that doesn't take anything away from Capron. Do you agree that this case is moot? I do. I do. And so how can we overturn an election that has been completed with results certified? I don't believe you can. You don't believe there's a public interest here with respect to this statute and need for interpretation for public officials in the future? As I said, globally, there's a general public interest in provision of ambulance services. Right. Our position is the statute is pretty clear on how this process is to be handled. Pretty clear? How is it pretty clear? It has to be absolutely clear, doesn't it? Okay. All right. All right. You got me. How about attractive clear? Right. It's absolutely clear. Right. Well, but there is some ambiguity, is there not? Some of the questions and colloquy I had with Mr. Hirsch, I think, brings that out. Do you want to point out why you think it's clear? Yeah. I don't believe there's any ambiguity. I think it was written, quite frankly, in a little bit of a genius manner because it is so simple. It states globally what the statute is intent to do. It states the public policy. That's in the public policy part, right? In the, I guess, the introductory paragraph. All right. The introductory paragraph. But then that paragraph also has this phrase, under the terms and conditions, here and after set out. Right. So what does that apply to? Our position is that it applies to paragraphs B, C, and D. Be like boy. B as in boy, yes. Those are the terms and conditions. Public policy is not a term and condition. It is what the General Assembly intended the statute to do. But B, C, and D are actually action items. It shows how to get that tax levy. It shows what processes you have to do. And in none of B, C, and D is there any reference to this adequate and continuing service. And it's our assertion that the adequate and continuing service isn't a condition precedent. It doesn't even inform this decision. So you're saying in B, whenever the Board of Trustees desires to levy a tax, it can do it. It does not have to be informed, at least by three. That is, whether adequate and continuing emergency ambulance services do not exist. It doesn't have to be with reference to anything. Is that correct? No. No, I don't agree with that. It is a big undertaking for a small fire protection district like this to operate an ambulance, emergency ambulance services. So certainly they consider, they, the district, considers what is going on in their district. Response times, geographic issues, population growth. There's a number of things that they are going to consider. And if they feel that the population growth and the response times and whatever are so, are needed, need additional emergency ambulance services, that's when the whenever comes into. So they internally make that decision, they, the district. And once they make that decision, they can act on it. Now, that decision doesn't need to be proven. There's no process in the statute to prove it. There's no administrative process. There's no criteria for geographic times or response times or anything along those lines. But, of course, the district itself is going to take that into consideration. Well, but doesn't that, aren't you really talking about the adequacy of the ambulance services that they have, which is referred to in A3? I mean, when you're talking about response times, et cetera, that goes to the adequacy of the services. Well, right. But what the plaintiffs are advocating is you've got to prove it somehow. And there's no process to prove it in this statute. So, sure, it's going to be considered by the district. How could it not be? Because it is such a large undertaking for a rural district like this. Well, what is it supposed to do insofar as its findings? Supposedly, there's overlapping areas and there are non-overlapping areas. Are they supposed to make a bifurcated finding that in the areas where there's an overlap, there's a finding that there's adequate covering? And then in the areas where there's not overlap, that there is insufficient findings? And what are the implications of these findings based upon the criteria? What does the state agency have to say about the regulation of ambulance services in overlapping areas? Is there anything that they've said or discussed? Not to my knowledge. The Illinois Department of Public Health is the one that governs and controls emergency ambulance services. They don't really get into territorial issues like this, which is why I think the statute is the beauty of the statute. Are you saying that they're only concerned with essentially response time that somebody wasn't dropped or was dropped instead of territorial arguments or conflicts? I would say that's very far afield of their jurisdiction or concern is the districting of these ambulance services. They are concerned with the training of the paramedics and the equipment and the licensing and all of that type of thing. It's not really their aspect, their area of expertise or control. Well, if they're concerned about those things, according to the referendum, it said authorized to levy a new tax. Wouldn't they have some concern? I mean, you say you're already doing it, but what's the purpose of a new tax? Wouldn't they want to know that? Sure. So Section 22 permits a district to establish emergency ambulance service without a tax. They just permit them to do it. And so that's what we had here. Now, the new tax is to expand this ambulance service. So there's been some determination by the district, some need that they have identified, and that is why they are seeking this new tax. But they've not made a public statement in support of this referendum that there is inadequate service? Oh, no. I believe it was very well publicized. Well, what statement did they make? What statement did the Fire Protection District make? That they identified a need for an additional emergency services. Isn't that in the preamble of the ordinance or the question that was certified in the clerk? I believe so. As a matter of fact, I'll let you say that. I think there is. Your time is up. Thank you. All right. Thank you. Unless there are other questions. Mr. Hirsch. A couple of things in a brief rebuttal. When it's said that the Fire Protection District is providing ambulance service, you notice you're very careful not to say emergency ambulance service because they don't provide emergency ambulance service. They provide transport service. And they're allowed to take care of their own firemen and revive their own firemen on site and at fires. That's the service they've been providing. That's why they have an ambulance. So I don't believe that... To the extent that they're dealing with firemen on site, it's an emergency service to the extent that in the event that the fireman needs to be transported to a medical facility, it would probably be reasonably determined to be an emergency. For their own personnel? That's correct. Not to the general public. And you can call the fire station directly and get a transport. So I don't want you to think that everything just goes through 9-1-1. What we're talking about here is emergency ambulance services through 9-1-1. But that's not what the levy says. Or is that not what the referendum says? It doesn't. It just says a new tax for ambulance purposes. Right. But what this is going to do is allow them to run an emergency ambulance service that's already being provided. Well, does that mean that your district doesn't do transport ambulance service? They will. They prefer to do simply the emergency ambulance service because the transport takes the ambulance out of service for too long. There are private emergency ambulance services within Boone County. I'm not trying to say that they're in this northern Boone County territory that we're talking about. But Lifeline is out there. With the move of the hospital in Winnebago County, right, almost to the Boone County line, we see a lot more Superior. I mean, we see a lot more of those. They provide emergency ambulance services. They, being Lifeline, they're contracted with a couple other municipalities. And then the transport services are done by Superior. So are there just two aspects? One is emergency. The second is transport. Is there a third aspect to ambulance services? Not that I'm aware of. I'm only aware of the emergency ambulance services and then the transport services. And you're saying the levy will allow the fire district then to start emergency services? That's our understanding of what North Boone Fire District 3 is wanting to do because they've applied with 911. And I stand corrected, it's the Department of Public Health. So I will concede that and I apologize. It's IDPH. I always get those acronyms wrong. So they've applied to the 911 board. They're working their way to providing emergency ambulance services due to this, from our understanding, due to this passage of the tax. To me, a conundrum that arises, maybe it's an enigma, and that is, you, I don't think, indicated just exactly how a finding was supposed to be formulated or created or promulgated or whatever. So am I correct that you didn't indicate that? There's no guidance in the statute. And all I can point you to is that you report that the emergency ambulance services have to report their response times, the care that was provided, where the transports were, they took someone. All of that information goes to IDPH, and they then have all of that information at their disposal. Caperton Rescue Squad has never fallen below those standards. In fact, they've always been greater than those standards that have been set. They're the ones that I think are in the best position to give an opinion as to whether there's adequate ongoing service. I will concede there's nothing in the statute that says how you're supposed to do that other than, you know, it just says that you're supposed to do that. It's possible that the statute could provide that the Fire Protection District send out publication that there's going to be a public hearing, and then they're going to have that hearing, and then they make findings and determinations, and then there's possibly administrative review or whatever. There may be declaratory, depending on what the statute says. But for us to make a determination that something wasn't followed requires to make a determination that something exists to be followed. And so when I reviewed the statute, it also popped into my mind relative to, okay, how do you limit the services? Because there doesn't seem to be much in there relative to what they're supposed to do, what the procedure is and so on. So in any event, are there any other questions?  Would you like to close? One final point, and I'll be done. I also think that it's very telling in Section 22A.3 that the language is very specific. It says that in the event adequate etiquette. So, again, I think that adds to this idea under the terms and conditions hereafter provided. So that's all I would close with, and I, again, appreciate your time. Thank you. Thank you. If we have other cases on the call, we're going to take a short recess.